## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DONTAY D. JOYNER,**

                     **Petitioner,**

**vs.**                                              **Case No. 8:05-CV-855-T-27TGW**

**UNITED STATES OF AMERICA,**

                     **Respondent.**

_____/

## <u>ORDER</u>

    **BEFORE THE COURT** is Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 6). Consistent with *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005), an evidentiary hearing was conducted on January 26, 2007, on Petitioner's claim that he was denied the effective assistance of counsel because his attorney did not file a notice of appeal after being requested to do so.[1] At the commencement of the hearing, Petitioner's counsel advised that Petitioner was abandoning all claims asserted in his § 2255 motion, except his claim in Ground Four, that his attorney failed to appeal after being requested to do so, and his claim asserted in Ground One, that the "Government failed to prove the quantity of drugs for purposes of imposing punishment." While under oath, in response to the Court's inquiry, Petitioner confirmed his desire to abandon all but those two claims in his § 2255 motion.

    Based on the testimony and evidence presented, this Court finds and concludes that Petitioner was not denied the effective assistance of counsel. Specifically, Petitioner's testimony that he requested Attorney Jeffrey Brown to file an appeal is not credible. Attorney Brown fulfilled his

---

[1] Counsel was appointed to represent Petitioner during the evidentiary hearing.

1

obligation to Petitioner when he explained the advantages and disadvantages of appealing to Petitioner and made reasonable efforts to determine his wishes.  After sentence had been imposed, Brown advised Petitioner that he saw no basis for an appeal, Petitioner indicated his agreement and never indicated to Brown that he desired to appeal.  Petitioner's claim regarding the Government's failure to prove the quantity of drugs used to calculate the sentencing guidelines should have been the subject of a direct appeal, was not, and is therefore procedurally defaulted.  Petitioner cannot show cause for the procedural default.  It is therefore barred from collateral review.  Accordingly, Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 6) is DENIED.

Petitioner was charged in a one count Indictment with knowingly, willfully and intentionally attempting to possess with intent to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of crack cocaine. (CR Dkt. 1).  After the Federal Public Defender was granted leave to withdraw, Attorney Jeffrey Brown was appointed to represent Petitioner under the Criminal Justice Act ("CJA"). (CR Dkt. 21).  On February 9, 2004, Petitioner pleaded guilty to the Indictment without a written plea agreement. (CR Dkt. 27).  On May 3, 2004, Petitioner was sentenced to 144 months of imprisonment to be followed by five (5) years of supervised release. (CR Dkts. 41, 49).  Petitioner did not directly appeal his sentence.  Petitioner filed the instant Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 on June 3, 2005. (CV Dkt. 6).[2]

---

[2] Petitioner filed his original motion to vacate on April 29, 2005.  While the motion was actually received and filed by the Clerk of Court on May 5, 2005, under the "mailbox rule," the motion was deemed filed on April 29, 2005, the date it was signed and presumably submitted to the prison authorities for mailing.  *See Adams v. United States,* 173 F.3d 1339, 1341 (11th Cir. 1999), (under the "mailbox rule," a pro se prisoner's motion to vacate is deemed filed on the date that he signed, executed, and delivered his petition to prison authorities for mailing). On May 17, 2005, the Court struck Petitioner's original motion to vacate and directed Petitioner to file an Amended Motion within twenty days. (CV Dkt. 4).  Petitioner complied with the Court's Order.  The instant Amended Motion to Vacate was received and filed by the Clerk of Court on June 10, 2005 but was signed and dated by Petitioner on June 3, 2005.

### *Ground Four: "Counsel was ineffective for failing to file a notice of appeal."*

In his Petition, Petitioner alleges that he requested his attorney to file a Notice of Appeal but that his attorney failed to do so. During the evidentiary hearing, Petitioner testified that immediately after sentence was imposed, he asked his attorney how much 144 months was and after his attorney explained that he received 12 years, he asked about an appeal. According to Petitioner, Brown told him he thought that under the circumstances, Petitioner received the best sentence he could have. Petitioner maintains that he nonetheless told Brown to appeal. According to Petitioner, Brown met with him only twice before he pleaded guilty, never explained his right to appeal or discussed possible appellate issues, and never advised Petitioner that by pleading guilty "straight up," without a plea agreement, that he was preserving his right to appeal. Petitioner's testimony is not credible.

Attorney Brown, relying in part on his contemporaneous notes in his file and his CJA voucher, in which he recorded his in-court and out-of-court time representing Petitioner, testified that he met with Petitioner seven times between November 5, 2003 and May 3, 2004, the date of sentencing.[3] Moreover, he had at least three telephone conversations with Petitioner. Until Petitioner was detained, Petitioner met with Brown in Brown's office several times in the company of Brown's father or another relative.

Brown acknowledges that his decision to plead guilty resulted from the U.S. Attorney's indication that they intended to enhance his sentence pursuant to 28 U.S.C. § 851 if he went to trial and was convicted. This would have exposed Petitioner to a life sentence. Significantly, on January 29, 2004, Brown met with Petitioner and reviewed a proposed plea agreement which had been

---

[3] Brown's file notes documented in person conferences with Petitioner on November 5 and 11, and December 19, 2003, January 29, February 9, April 5, and May 3, 2004.

3

forwarded to Brown by the Assistant United States Attorney prosecuting Petitioner. Brown maintained the proposed plea agreement in his file. Based on his discussions with Petitioner, he "scratched through" several aspects of the factual basis proposed in the agreement, attempting to reach agreement with the Government on a factual basis which was consistent with Petitioner's account of the drug transactions he engaged in and the quantities involved. The Government rejected the proposed changes.

The proposed plea agreement contained an appeal waiver clause. During the January 29, 2004 conference, Brown explained the appeal waiver clause to Petitioner and discussed potential issues for appeal in light of the probable relevant conduct for which Petitioner would be held accountable, including the quantity of drugs used to calculate the sentencing guidelines. Brown recommended that Petitioner plead guilty without a plea agreement, so that Petitioner's right to appeal could be preserved, in the event "things went bad at sentencing." Following Brown's advice, Petitioner rejected the plea agreement and pleaded guilty without an agreement. According to Brown, Petitioner understood what the issues were before the sentencing hearing and the potential issues for appeal. Petitioner knew their relevant conduct argument was weak and likely would not be successful on appeal. Most telling, Petitioner understood that if he appealed successfully, there was a possibility that the § 851 enhancement would be resurrected and he could face life. Finally, Petitioner understood how favorable the sentencing hearing went.

During the sentencing hearing, Brown prevailed on most of the issues he raised before the Court. For example, he was able to convince the Court to award Petitioner three points for acceptance of responsibility, notwithstanding that Petitioner had been arrested and detained on a new charge. Additionally, although Brown was not able to improve Petitioner's criminal history points,

4

he was successful in obtaining a ruling that Petitioner's criminal history category was over-representative of Petitioner's criminal history.  When the sentencing hearing began, Petitioner faced a guideline range of 210 to 262 months, based on a Offense Level 32, Criminal History Category VI. As a result of Brown's efforts, Petitioner was sentenced based on an Offense Level 29, Criminal History Category IV, resulting in a range of 121 to 151 months.  Brown was also hoping to convince the Government to file a Rule 35 motion to reduce sentence sometime after sentencing.

After sentence was imposed and the Court advised Petitioner of his right to appeal, Brown advised Petitioner that he saw no basis for an appeal.  Brown recalls Petitioner acknowledging his agreement, although he cannot recall the specific words Petitioner used.  According to Brown, Petitioner did not ask him to appeal and never indicated in any way whatsoever that he wanted to appeal. Brown adamantly testified that if Petitioner even hinted at appealing, Brown would have met with Petitioner and discussed an appeal.  As he was appointed under the CJA, according to Brown, there would have been no reason not to appeal if Petitioner had requested him to do so, as he would have earned additional compensation.  If Petitioner had asked him to appeal, he would have filed one, as he does for numerous CJA clients on a regular basis.

After sentencing, Brown had only two contacts with Petitioner.  On August 30, 2004, the day Brown attempted to convince the prosecutor to file a Rule 35 motion on behalf of Petitioner, Brown recalled speaking with Petitioner on the telephone about the prospect of a Rule 35 motion.  Brown received Petitioner's March 15, 2005 letter advising Brown that Petitioner was preparing a § 2255 motion and requesting certain documents. (Government's Exh. 1).   Brown received no other communication from Petitioner.  Petitioner did not mention an appeal either during the telephone conversation or in his letter to Brown.

Attorney Brown's testimony is credible.  He is an experienced criminal defense attorney who regularly accepts CJA appointments and files appeals on a regular basis on behalf of CJA clients. He currently serves as the CJA representative for the United States District Court, Middle District of Florida.  Given his success during Petitioner's sentencing, explanations for advising Petitioner that there were no issues to appeal are not only credible but convincing.  No rational defendant, particularly one who, like Petitioner, initially faced a life sentence and whose attorney had obtained a reduction in his exposure of more than five years, would have wanted to file an appeal and risked facing a life sentence again.  Brown had no reason to believe or even surmise that Petitioner, who expressed his gratification to Brown in open court, expected Brown to pursue an appeal with such little hope of success.

During his several conferences with Petitioner, Brown discussed and explained the advantages and disadvantages of pursuing an appeal, the reasons for not agreeing to an appeal waiver, the potential issues to raise on appeal, and made a reasonable effort to determine his wishes. They agreed on a strategy for sentencing, which included the potential for an appeal, "if things went bad at sentencing."  Things did not "go bad" at sentencing.  To the contrary, they went extremely well for Petitioner, and he knew and understood that.  To the extent Petitioner suggests that Brown had a duty to consult with Petitioner during the ten days immediately following sentencing, that contention is without merit, given Brown's numerous conferences with Petitioner prior to sentencing.  Given those consultations and the successful sentencing hearing, it was not necessary that Brown again review Petitioner's appellate rights with him, absent an indication from Petitioner that he was considering an appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000) (rejecting brightline rule that counsel must always consult with defendant regarding appeal); *Medina v. United*

6

*States*, 167 Fed. Appx. 128, 134-35 (11th Cir. 2006)(where client neither instructs attorney to appeal nor asks that an appeal not be taken, relevant question in determining whether attorney performed deficiently by not filing NOA is "whether counsel in fact consulted with the defendant about an appeal").

Petitioner's testimony that he asked Brown to file an appeal immediately after sentencing is simply not credible. Petitioner's testimony that he only met with Brown twice was directly refuted by Brown's contemporaneous notes of his conferences with Petitioner. Petitioner did not testify truthfully. Petitioner's testimony that Brown never discussed the advantages and disadvantages of appealing is flatly contradicted by Brown's testimony and his notations in his file made during those discussions. This Court finds that Petitioner did not instruct Brown to file an appeal. The per se duty to appeal outlined in *Flores-Ortega* was not, therefore, triggered. Petitioner's attorney fulfilled his constitutional duty to consult with Petitioner and make a reasonable effort to determine Petitioner's wishes. He acted in accordance with those wishes.

Given Petitioner's understanding and agreement with Attorney Brown's advice and sentencing and appeal strategy, Brown's consultations satisfy the requisite "reasonable effort to determine the client's wishes." *Flores-Ortega,* supra at 478. An attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner. *Gomez-Diaz,* supra at 792. Where, however, as here, Petitioner did not request that his attorney file an appeal, the attorney has not rendered ineffective assistance of counsel. Attorney Brown's conduct cannot be considered "professionally unreasonable." *Strickland v. Washington*, 466 U.S. 668, 691 (1969). Ground Four is therefore denied.

### Ground One: "Government failed to prove the quantity of drugs for purposes of imposing punishment."

Since Petitioner did not raise this issue on direct appeal, and could have, it is procedurally defaulted and cannot be challenged collaterally. *Richards v. United States,* 837 F.2d 965, 966 (11th Cir. 1988) ("[F]ailure to raise a nonconstitutional ground on direct appeal generally precludes consideration of that argument in a § 2255 motion."). A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal. *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir.2001). Petitioner cannot show cause for his procedurally default as he decided not to appeal his sentence.

Even if this claim were not procedurally defaulted, it would be denied as frivolous. The Indictment alleged the quantity of crack cocaine Petitioner was alleged to have attempted to possess. (CR Dkt. 1). Moreover, when he entered his guilty plea, Petitioner admitted that he attempted to purchase 50 grams or more of crack cocaine. (CR Dkt. 48, p. 18). Any factual disputes concerning the quantity of crack in each of the three packets Petitioner was held accountable for were resolved by the Court during the sentencing hearing. The sentencing guidelines were correctly calculated based on the findings of the Court. Ground One is therefore denied. Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 6) is DENIED. All other pending motions are denied as moot. The clerk is directed to enter judgment against Petitioner and close this case.

**DONE AND ORDERED** in chambers this 31st day of January, 2007.

/s/James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Petitioner/pro se
Counsel of Record